**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division**

**BYRON MATTHEW JOHNSON,**

    **Plaintiff,**

v.                                             Case No.  7:20cv0642

**ELDOR AUTOMOTIVE
POWERTRAIN USA, LLC**

**Serve:**
    **R/A CT Corporation System**         **JURY TRIAL DEMAND**
    **4701 Cox Rd., Suite 285**
    **Glen Allen, Virginia 23060**

    **Defendant.**

## COMPLAINT

The above-named Plaintiff, Byron Matthew Johnson ("Mr. Johnson" or "Plaintiff"), by counsel, states as his Complaint against Defendant Eldor Automotive Powertrain USA, LLC ("Eldor" or "Defendant"), the following:

### I. JURISDICTION

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII of the Civil Rights Act of 1964, as codified under 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 2000e-5(f) ("Title VII"), and by the Fair Labor Standards Act ("FLSA"), as codified under 29 U.S.C. §§ 206, 207 and 216; *see also* Title 28 U.S.C. §§ 1331, 1337, 1343(a)(4), 2201, and 2202.

2. Plaintiff timely filed a Charge of Discrimination with the Equal Employment

1

Opportunity Commission ("EEOC") in July of 2019.  Plaintiff received a Dismissal and Notice of Rights from the EEOC, dated August 5, 2020, attached hereto as **EXHIBIT A**.  Plaintiff files suit within ninety (90) days of receipt of the Dismissal and Notice of Rights.

3.  This Court has supplemental jurisdiction over Count III: Breach of Contract pursuant to 28 U.S. Code § 1367, as the acts and/or omissions giving rise to the violation of this claim arose from the same basis of operative fact and form part of the same case or controversy under the law. Count III is a breach of contract action regarding Plaintiff's employment.  The contract has been appended to this pleading and made a part hereof as **EXHIBIT B**.  A forum selection clause (¶7) dictates that the contract shall be construed pursuant to the laws of the Commonwealth of Virginia.  Pursuant to 28 U.S.C. § 1367(a), this claim is so related to claims involving original jurisdiction that they form part of the same case or controversy.

## II. THE PARTIES

4.  Plaintiff Mr. Johnson is a resident of Botetourt County, Virginia.

5.  Defendant Eldor is incorporated in Delaware but does business within the Commonwealth of Virginia.  Specifically, Eldor owns and operates a manufacturing facility located in Botetourt County, Virginia at which Mr. Johnson worked.  Therefore, due to its contacts within the Commonwealth, Eldor avails itself to the jurisdiction of this Court.

6.  Eldor's Botetourt County facility manufactures ignition coils for applications in automotive ignition systems.

## III.  FACTUAL BACKGROUND

### A. Plaintiff Hired and Directed to Start Production at New Facility

7. Byron Matthew Johnson was hired by Eldor on or about June 21, 2017 as the Engineering and Maintenance Manager at Eldor's Virginia facility, a position he held until his unlawful termination on or about December 13, 2018.

8. While operating in the United States, Eldor is an Italian-owned company. Eldor's European headquarters is located in Orsenigo, Italy.  Management at the Virginia facility takes continuous and repeated direction from Eldor management based in Italy.  Likewise, many employees travel between the two facilities, and, at times, the company has had a blend of European and Virginian employees at the Virginia facility.

9. Mr. Johnson is a Caucasian male whose national origin is that of the United States of America.  Until his unlawful termination, Mr. Johnson worked for Eldor on a consistent, full-time basis, and met Eldor's legitimate expectations.  However, Mr. Johnson was subjected to discrimination based upon his national origin throughout his employment with Eldor.

10. In June of 2017, Mr. Johnson was one of Eldor's first employees hired at Eldor's Virginia facility. Hired as an "Engineering Manager", Mr. Johnson was tasked initially with hiring employees to staff Eldor's assembly lines and otherwise, to start the plant into production.

### B. The Parties Enter Into a Contract that Contemplated Severance

11. Mr. Johnson and Eldor executed a binding employment contract regarding Mr.

Johnson's employment. This contract provided that Mr. Johnson's employment was "not for any specific period time" and that Mr. Johnson was an employee "at will". (**EXHIBIT B**, ¶5),

12. As provided in Paragraph 6.1 of the contract:

> Except as otherwise provided herein, in the event Employee's employment is terminated by the Company for other than Cause, Employee shall have the right to receive severance compensation equal to three (3) months of employee's then current base salary; and employee will also be paid earned but unpaid base salary through the date of termination and earned but unused vacation days, and may be eligible for continued benefits as required by law.

### C. "The Eldor Way": Untenable Working Conditions and U.S. Citizens Disfavored

13. Eldor has engaged in a pattern and practice of discrimination by hiring employees of Caucasian descent and American national origin and causing them to work untenable and illegal hours[1].

14. During Mr. Johnson's employment with Eldor, upper management was mostly of Italian national origin. Eldor attempted to replace or did replace employees of Caucasian descent and American national origin with non-Caucasian employees of Turkish descent from Eldor's sister factory in Izmir, Turkey.

15. The workload that Eldor directed Mr. Johnson to cover was far in excess of the expected workload that Eldor had characterized to Mr. Johnson prior to his hire. As

---

[1] *See Broussard v. Eldor*, Case No. 7:19-cv-841, U.S. District Court, WDVA, Roanoke Division.

4

Mr. Johnson began hiring team members, he and his co-workers routinely worked days and nights, amounting to seventy (70) to eighty (80) hours per week.

16. Shortly after Mr. Johnson hired his team members, Mr. Johnson complained to Human Resources about the excessive hours per week that his team members were required to work. Human Resources responded, essentially, that this was the "Eldor Way."

### D. Plaintiff Witnesses Eldor Not Paying Employees Overtime

17. Pursuant to the Fair Labor Standards Act and related regulations, Mr. Johnson was an exempt employee and could not qualify for overtime compensation. However, Mr. Johnson frequently observed non-exempt Eldor employees deserving of overtime not receive any overtime compensation. Though not a lawyer himself, Mr. Johnson believed that Eldor was violating federal law.

18. In June of 2018, morale amongst the Eldor employees in Virginia was extremely low due to the working conditions. Mr. Johnson's direct supervisor, Plant Manager Fabio Piscone, a non-Caucasian man of Italian descent, instructed Mr. Johnson to reprimand one of Mr. Johnson's employees for "walking too slowly."

19. Mr. Johnson politely and professionally insisted that such a comment would be unwelcomed and urged Mr. Piscone to reconsider given the working conditions of the facility.

### E. Management Threatens to Replace U.S. Workers with Turkish Workers

20. Mr. Piscone retorted, "it would be easier to fire all of these guys and just start

over. We could just drop any Turkish guy in here and it would be fine." The country of Turkey's labor laws are not as robust as those in the United States.

21. In October of 2018, Mr. Johnson's direct report, Process Engineer Ben Wilkerson, sent an email to Chief Executive Officer Giovanni Scafidi, detailing the untenable working hours of himself, Mr. Johnson, and the American employees at Eldor.

22. At the end of October of 2018, Mr. Johnson met with Mr. Scafidi to share his concerns with the working conditions inside Eldor's Botetourt plant. Mr. Scafidi informed Mr. Johnson of a plan where Manager Gokhan from Eldor's Izmir, Turkey Plant and a team of Turkish engineers would temporarily replace most of the Engineering team at the Botetourt plant.

23. In or about early November of 2018, Plant Manager Gokhan arrived at the Botetourt plant. Mr. Gokhan ordered Mr. Johnson and the other Caucasian, American managers to work twelve (12) to twenty (20) hour shifts.

24. Mr. Gokhan, like the rest of Eldor management, had unreasonably high expectations and was extremely restrictive of Eldor employees ever taking time away from work. As an example, Mr. Johnson requested to leave the facility in the evening to watch a 6:00 PM sporting event in which Mr. Johnson's child participated. Mr. Johnson politely reminded Mr. Gokhan that Mr. Johnson had clocked in for work that day at 3:00 AM. Mr. Gokhan became irritated and suggested that Mr. Johnson use vacation time for leaving the plant to watch the game.

25. Mr. Johnson feared complaining too frequently about his untenable working

conditions due to Mr. Piscone's and Mr. Gokhan's repeated threats of termination and being replaced by Turkish workers.

26. In mid-November of 2018, Mr. Gokhan ordered Mr. Johnson to recall his employees, who had already worked a full shift and were at home back to the facility to work on the night shift. Mr. Johnson's employees were hired specifically for the day shift. Mr. Johnson suggested that the employees might try to unionize if their work shifts were altered in this way. Mr. Gokhan retorted that he would terminate any employee who tried to unionize.

27. Eldor management viewed the U.S. citizen workers in a negative light in comparison with similarly situated citizens from Europe, particularly Turkey.

### F. Plaintiff Engages in Protected Complaints

28. Around this time in the fall of 2018, Mr. Johnson complained verbally to Human Resource Manager Bridgette Farmer that Eldor had not posted any required legal notice posters (such as posters advising employees of their overtime rights). Ms. Farmer ignored Mr. Johnson's complaint, and Eldor refused to post any posters advising Eldor employees of their workplace rights.

29. Shortly after his complaint to Human Resources, Mr. Johnson was required to work a near twenty-four (24) hour shift. A direct report of Mr. Johnson's had worked an eighteen (18) hour shift, and Mr. Johnson informed Mr. Piscone that Mr. Johnson had a legal duty to direct this employee to leave work. This visibly irritated Mr. Piscone.

30. Days prior to Thanksgiving of 2018, Mr. Johnson and Mr. Wilkerson sent emails to Mr. Scafidi and Eldor corporate Human Resources describing the untenable

working conditions at the facility and the discrimination workers faced. Mr. Johnson complained about:

    a) U.S. citizen workers being threatened with termination in favor of replacement by Turkish employees;

    b) Being discriminated against as Eldor favored Turkish employees; and

    c) The lack of overtime being paid to eligible employees at the plant.

### G. Retaliation

31. In early December of 2018, Mr. Johnson learned that Mr. Piscone wanted to terminate Mr. Wilkerson for "making [Mr. Piscone] look bad" to Mr. Scafidi, Mr. Piscone's direct supervisor. Human Resource Manager Bridgette Farmer also agreed to the termination of Mr. Wilkerson due to him making Ms. Farmer "look bad to Michele Ciavola," her supervisor.

32. Mr. Johnson was rightfully terrified of being terminated and replaced with a Turkish worker after hearing Mr. Piscone and Ms. Farmer discuss the retaliation that Mr. Wilkerson would soon suffer.

### H. Plaintiff Receives Baseless Performance Improvement Plan, But Denied Chance to Even Attempt to Complete It

33. Unfortunately, Mr. Johnson's fears of retaliation materialized. On or about December 10, 2018, Mr. Johnson was presented with a Performance Improvement Plan, with an effective date of December 12, 2018. Mr. Johnson's work performance had always met Eldor's legitimate expectations. One of the items in the Performance Improvement Plan implemented against Mr. Johnson stated that Mr. Johnson needed

"to improve upon good results already achieved."

34. The Performance Improvement Plan given to Mr. Johnson was clearly retaliatory and lacked any merit. Prior to receiving the Plan, Mr. Johnson had never been issued any workplace discipline, counseling, nor any written performance evaluation of any kind. Indeed, Mr. Johnson had been verbally praised by management for his hard work and devotion prior to receiving the Plan.

35. On December 12, 2018, the day that the Performance Improvement Plan became effective for Mr. Johnson, Mr. Piscone directed Mr. Johnson to terminate Mr. Wilkerson's employment.

36. Eldor based its decision to terminate Mr. Wilkerson's employment due to his complaints of the working conditions at the plant including lack of overtime pay for eligible workers and national origin discrimination at the hands of Mr. Piscone, Mr. Gokhan, and other foreign national managers.

37. Mr. Johnson met with Ms. Farmer and Mr. Piscone regarding this termination. Mr. Johnson asked them what the official cause for termination would be for Mr. Wilkerson. Ms. Farmer stated that "in Virginia you do not need a cause for termination, I can fire you for your hair being purple."

38. Mr. Johnson politely and professionally reminded Ms. Farmer that her comment did not follow company policy and that it would be very difficult to train a new engineer to Mr. Wilkerson's level. Mr. Piscone responded, "we will just pick up a Turkish guy." Mr. Johnson agreed to follow Ms. Farmer's and Mr. Piscone's direction due to Mr. Johnson's fear of being terminated for insubordination.

### I. Mr. Piscone Highlights Plaintiff's Protected Complaints as the Reason for Plaintiff's Termination

39. Before the termination of Ben Wilkerson could occur, on December 13, 2018, Mr. Piscone and Ms. Farmer called Mr. Johnson into a meeting. Mr. Piscone threw Mr. Johnson's email to Mr. Scafidi detailing the conditions inside the plant, lack of overtime compensation, and discrimination of the American workers upon the table and exclaimed, "I can't work like this." Almost in the same instance, Ms. Farmer stated to Mr. Johnson, "what Fabio [Piscone] is saying is that you're fired." Mr. Johnson was terminated for no legitimate reason other than his whistleblower complaints and/or complaints of discrimination/retaliation, and Eldor's desire to replace Mr. Johnson with a Turkish worker.

40. Eldor has an obligation to maintain a working environment not charged with national origin discrimination. However, Eldor permitted a work environment to exist that was discriminatory and offensive to Mr. Johnson and engaged in discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Johnson. Eldor would not have taken the discriminatory actions against Mr. Johnson but for his national origin and/or his complaints regarding national origin discrimination and/or his complaints about workers not being paid overtime compensation.

41. Eldor has an obligation to compensate non-exempt employees for all owed overtime compensation pursuant to the FLSA. Eldor failed in this obligation and

retaliated against Mr. Johnson for fighting for the rights of others.

## COUNT I: CLAIM FOR TITLE VII NATIONAL ORIGIN DISCRIMINATION

42. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

43. Mr. Johnson identifies his national origin as a citizen of the United States.

44. At all times material hereto, Eldor had an obligation to maintain a work environment that was not charged with national origin discrimination and hostile to Mr. Johnson.

45. Eldor violated federal law by creating and permitting a work environment to exist that was discriminatory and hostile to Mr. Johnson and other U.S. citizens by wrongfully discharging Mr. Johnson.

46. The Eldor employees who decided to terminate Mr. Johnson and others were acting in the course and scope of their employment with Eldor at the time of their actions; therefore, Eldor is liable for their actions under the doctrine of *respondeat superior*. Their actions against Mr. Johnson were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

47. As a direct and proximate result of Eldor's actions, Mr. Johnson has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

48. At all times material hereto, Eldor engaged in a discriminatory practice or

practices with malice or reckless indifference to the federally protected rights of Mr. Johnson so as to support an award of punitive damages.

49. Prior to Mr. Johnson's termination, Mr. Johnson was performing his work at a satisfactory level and meeting or exceeding Eldor's legitimate business expectations.

50. Any reasons cited by Eldor for the issuance of Mr. Johnson's Performance Improvement Plan or for Mr. Johnson's termination were pretextual as Mr. Johnson's work performance was meeting legitimate business expectations.

51. The above-described acts by Eldor constitutes national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

52. Mr. Johnson is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT II:  CLAIM FOR TITLE VII NATIONAL ORIGIN RETALIATION

53. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

54. Mr. Johnson identifies his national origin as a citizen of the United States.

55. At all times material hereto, Eldor had an obligation to maintain a work environment that was not charged with national origin discrimination and hostile to Mr. Johnson.

56. Eldor violated federal law by permitting a work environment to exist that was discriminatory, hostile, and offensive to Mr. Johnson and other U.S. citizens, and that punished, retaliated against, and prejudiced a victim of a discriminatory work environment for complaining of the same.

57. Mr. Johnson experienced discrimination based upon his national origin, a U.S. citizen.

58. Mr. Johnson engaged in the protected activity of complaining about this discriminatory work environment (on behalf of himself and other co-workers) and was subsequently targeted and terminated.

59. Mr. Johnson was terminated from employment in direct retaliation for his complaints about workplace discrimination.

60. The Eldor employees who decided to terminate Mr. Johnson and others were acting in the course and scope of their employment with Eldor at the time of their actions; therefore, Eldor is liable for their actions under the doctrine of *respondeat superior*.  Their actions against Mr. Johnson were committed during working hours and at their place of employment and/or were in conjunction with work-related responsibilities.

61. Prior to Mr. Johnson's termination, Mr. Johnson was performing his work at a satisfactory level and meeting or exceeding Eldor's legitimate business expectations.

62. Any reasons cited by Eldor for the issuance of Mr. Johnson's Performance Improvement Plan or for Mr. Johnson's termination were pretextual as Mr. Johnson's work performance was meeting legitimate business expectations.

63. As a direct and proximate result of Defendants' actions, Mr. Johnson has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

64. At all times material hereto, Eldor engaged in retaliatory practices with malice

or reckless indifference to the federally protected rights of Mr. Johnson so as to support an award of punitive damages.

65. The above-described acts by Defendants constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

66. Mr. Johnson is entitled to all reasonable costs, including attorneys' fees, associated with this matter, plus interest, pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT III:  BREACH OF CONTRACT

67. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

68. Mr. Johnson and Eldor entered into a binding contract.

69. That contract provides that should Eldor terminate Mr. Johnson not for "cause", then Mr. Johnson is entitled to three (3) months of severance pay.

70. Eldor did not terminate Mr. Johnson for cause.  Mr. Johnson was terminated due to illegal discrimination and retaliation.

71.  Eldor did not provide Mr. Johnson with any severance pay upon the termination of his employment.  Accordingly, Eldor breached the contract between the parties entitling Mr. Johnson to three (3) months of severance pay.

72. As a direct and proximate result of Eldor's breach of contract, Mr. Johnson has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

## COUNT IV:  RETALIATION PURSUANT TO THE FLSA

73. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

74. Plaintiff complained about the aforementioned violations of the FLSA to Eldor supervisory employees shortly before his termination.  Moreover during Mr. Johnson's termination, Mr. Piscone highlighted the complaint as *the reason* Mr. Johnson was being terminated.

75. Eldor willfully and unlawfully terminated Mr. Johnson in retaliation for his complaints about FLSA violations, in violation of 29 U.S.C. § 215(a)(3).

76. Eldor cannot show that its violations of the FLSA were in good faith and that it has reasonable grounds for believing that its acts or omissions were not violations of the FLSA.

77. As used herein, "willful" is meant in accordance with 29 U.S.C. § 255(a), and "good faith" and "reasonable grounds" is meant in accordance with 29 U.S.C. § 260.

78. Eldor is liable under the FLSA to Mr. Johnson for actual and liquidated damages for its willful and bad faith retaliation as described above.


WHEREFORE, Plaintiff, Byron Matthew Johnson, prays for judgment against Defendant Eldor Automotive Powertrain USA, LLC, for equitable relief, compensatory, liquidated and punitive damages, back pay, front pay, all together with prejudgment interest from the date of termination of Plaintiff's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED

                Respectfully submitted,

                **BYRON MATTHEW JOHNSON**

                /s/ Thomas E. Strelka
                Thomas E. Strelka, Esq. (VSB# 75488)
                L. Leigh R. Strelka, Esq. (VSB # 73355)
                N. Winston West, IV, Esq. (VSB #92598)
                Brittany M. Haddox, Esq. (VSB # 86416)
                Monica L. Mroz, Esq. (VSB #65766)
                STRELKA EMPLOYMENT LAW
                119 Norfolk Avenue, S.W., Suite 330
                Warehouse Row
                Roanoke, VA  24011
                Tel:  540-283-0802
                thomas@strelkalaw.com
                leigh@strelkalaw.com
                winston@strelkalaw.com
                brittany@strelkalaw.com
                monica@strelkalaw.com

                *Counsel for Plaintiff*